No. 19-11200

# In the United States Court of Appeals for the Fifth Circuit

Mark Moody,

*Petitioner-Appellant,*

*v.*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

## BRIEF FOR RESPONDENT-APPELLEE

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Ari Cuenin
Assistant Solicitor General
Ari.Cuenin@oag.texas.gov

Counsel for Respondent-Appellee

# Certificate of Interested Persons

No. 19-11200

Mark Moody,

*Petitioner-Appellant,*

*v.*

Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

*Respondent-Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Ari Cuenin
Ari Cuenin
*Counsel of Record for*
*Respondent-Appellee*

## Statement Regarding Oral Argument

Oral argument is unnecessary in this case because the district court's ruling can be affirmed based on a straightforward reading of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2244(d)(1). If, however, the Court believes that further analysis is warranted, oral argument may be appropriate to explain why there is no constitutional right to habeas counsel, *see Coleman v. Thompson*, 501 U.S. 722 (1991), and why petitioner cannot revive his untimely federal habeas claim with the equitable procedural-default rule announced in *Martinez v. Ryan*, 566 U.S. 1 (2012), and applied in Texas through *Trevino v. Thaler*, 569 U.S. 413 (2013).[1] Thus, if the Court holds oral argument, the Director respectfully requests the opportunity to participate.

---

[1] "*Trevino* merely clarified that [*Martinez*'s] exception applies whether state law explicitly or effectively forecloses review of the claim on direct appeal." *Davila v. Davis*, 137 S. Ct. 2058, 2066 (2017). So unless otherwise noted, any reference to *Martinez* encompasses *Trevino*'s holding.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................. i

Statement Regarding Oral Argument ..................................................... ii

Table of Authorities ............................................................................. iv

Introduction ......................................................................................... 1

Issues Presented ................................................................................... 3

Statement of the Case ........................................................................... 4

    I.    Moody's Conviction and Sentence ............................................ 4

    II.   Moody's Collateral Attacks on His Conviction and Sentence ......... 6

Summary of the Argument .................................................................... 8

Standard of Review .............................................................................. 9

Argument ............................................................................................. 9

    I.    Moody Cannot Revive His Meritless Bid for Equitable Tolling. .............. 11

    II.   Moody Failed to Establish a Constitutional Right to Counsel in Habeas Proceedings, Let Alone One Excusing His Untimely Federal Petition. ...................................................................... 12

        A.   There is no constitutional right to counsel in habeas proceedings. .... 13

        B.   No deprivation of counsel in *state* habeas court would excuse Moody's untimeliness in *federal* habeas court. ................................. 17

    III. *Martinez*'s Procedural-Default Rule Does Not Apply to AEDPA's Statute of Limitations or Allow Moody to Litigate His Meritless Claim. .................................................................... 24

        A.   *Martinez* does not apply to 28 U.S.C. § 2244(d)(1). ......................... 24

        B.   Moody does not satisfy the conditions of *Martinez*. ......................... 28

        C.   The Court may affirm on the alternative ground that Moody's IATC claim is meritless ................................................................ 33

Conclusion .......................................................................................... 41

Certificate of Service ........................................................................... 42

Certificate of Compliance .................................................................... 42

# Table of Authorities

**Page(s)**

**Cases:**

*Adekeye v. Davis,*
  938 F.3d 678 (5th Cir. 2019) .................................................................. 33

*Ahart v. Bradshaw,*
  122 F. App'x 188 (6th Cir. 2005) ....................................................... 34

*Armstead v. Scott,*
  37 F.3d 202 (5th Cir. 1994) ................................................................. 37

*Arthur v. Thomas,*
  739 F.3d 611 (11th Cir. 2014) ........................................... 25, 26, 27, 28

*Banister v. Davis,*
  140 S. Ct. 1698 (2020) ........................................................................ 17

*Beazley v. Johnson,*
  242 F.3d 248 (5th Cir. 2001) .............................................................. 18

*Bland v. Superintendent Greene SCI,*
  No. 16-3457, 2017 WL 3897066 (3d Cir. Jan. 5, 2017) ........................ 25, 26, 27

*Bradford v. Whitley,*
  953 F.2d 1008 (5th Cir. 1992) ............................................................ 33

*Burgett v. Texas,*
  389 U.S. 109 (1967) ........................................................ 31, 32, 38, 39

*Cantu v. Collins,*
  967 F.2d 1006 (5th Cir. 1992) ............................................................ 36

*Christeson v. Roper,*
  574 U.S. 373 (2015) ............................................................................ 22

*Clark v. Collins,*
  19 F.3d 959 (5th Cir. 1994) ............................................................... 33

*Cobb v. Thaler,*
  682 F.3d 364 (5th. Cir. 2012) ............................................................ 16

*Coleman v. Thompson,*
  501 U.S. 722 (1991) ........................................................ ii, 12, 20, 24

*Couthren v. State,*
  571 S.W.3d 786 (Tex. Crim. App. 2019) ........................................... 4-5

*Cullen v. Pinholster,*
  563 U.S. 170 (2011) ...................................................................... 29, 39

iv

*Davila v. Davis*,
  137 S. Ct. 2058 (2017) ........................................................................ ii, 16, 24, 25
*Day v. McDonough*,
  547 U.S. 198 (2006) ........................................................................ 33
*Del Toro v. Quarterman*,
  498 F.3d 486 (5th Cir. 2007) ........................................................................ 34
*Dep't of Homeland Sec. v. Thuraissigiam*,
  140 S. Ct. 1959 (2020) ........................................................................ 16
*Dickerson v. Davis*,
  No. 4:17-cv-71-A, 2018 WL 2431846 (N.D. Tex. May 30, 2018) ...................... 25
*Dist. Atty's Off. for Third Jud. Dist. v. Osborne*,
  557 U.S. 52 (2009) ........................................................................ 18-19
*Dorsey v. Stephens*,
  720 F.3d 309 (5th Cir. 2013) ........................................................................ 9
*Edwards v. Carpenter*,
  529 U.S. 446 (2000) ........................................................................ 21
*Edwards v. Vannoy*,
  141 S. Ct. 1547 (2021) ........................................................................ 16, 17
*Elizalde v. Dretke*,
  362 F.3d 323 (5th Cir. 2004) ........................................................................ 22
*Estelle v. McGuire*,
  502 U.S. 62 (1991) ........................................................................ 19
*Fay v. Noia*,
  372 U.S. 391 (1963) ........................................................................ 23
*Fisher v. Johnson*,
  174 F.3d 710 (5th Cir. 1999) ........................................................................ 12
*Flanagan v. Johnson*,
  154 F.3d 196 (5th Cir. 1998) ........................................................................ 14, 15
*Ford v. Davis*,
  910 F.3d 232 (5th Cir. 2018) ........................................................................ 34
*Garcia v. Stephens*,
  793 F.3d 513 (5th Cir. 2015) ........................................................................ 19
*Ex parte Garcia*,
  486 S.W.3d 565 (Tex. Crim. App. 2016) ........................................................................ 19
*In re Gentras*,
  666 F.3d 910 (5th Cir. 2012) ........................................................................ 17

*Gideon v. Wainwright*,
   372 U.S. 335 (1963) ............................................................. 6, 13, 31

*In re Goff*,
   250 F.3d 273 (5th Cir. 2001) .............................................................. 13

*Gonzalez v. Thaler*,
   623 F.3d 222 (5th Cir. 2010) .............................................................. 15
   565 U.S. 134 (2012) ............................................................................ 15

*Ex parte Graves*,
   70 S.W.3d 103 (Tex. Crim. App. 2002) ............................................ 19

*Ex parte Guzman*,
   589 S.W.2d 461 (Tex. Crim. App. 1979) .......................................... 31

*Halbert v. Michigan*,
   545 U.S. 605 (2005) ........................................................................... 13

*Hanna v. State*,
   426 S.W.3d 87 (Tex. Crim. App. 2014) ............................................. 4

*Harrington v. Richter*,
   562 U.S. 86 (2011) ..........................................................16, 29, 39, 40

*Henderson v. Cockrell*,
   333 F.3d 592 (5th Cir. 2003) .............................................................. 18

*Hill v. Lockhart*,
   474 U.S. 52 (1985) ............................................................................. 37

*Holland v. Florida*,
   560 U.S. 631 (2010) ........................................................................... 11

*Holland v. Jackson*,
   542 U.S. 649 (2004) ........................................................................... 35

*Hughes v. Vannoy*,
   7 F.4th 380 (5th Cir. 2021) ................................................... 2, 20, 21

*Ibarra v. Davis*,
   738 F. App'x 814 (5th Cir. 2018) ............................................... 25, 35

*Iowa v. Tovar*,
   541 U.S. 77 (2004) ......................................................................31, 39

*Irving v. Hargett*,
   59 F.3d 23 (5th Cir. 1995) ................................................................. 13

*Johnson v. Hargett*,
   978 F.2d 855 (5th Cir. 1992) .............................................................22

*Lackawanna Cnty. Dist. Att'y v. Coss*,
    532 U.S. 394 (2001) ................................................. 15
*Lafler v. Cooper*,
    566 U.S. 156 (2012) ................................................. 40
*Langley v. Prince*,
    926 F.3d 145 (5th Cir. 2019) (en banc) .......................... 19
*Lawrence v. Florida*,
    421 F.3d 1221 (11th Cir. 2005) .................................. 23
    549 U.S. 327 (2007) ............................................... 23
*Leal Garcia v. Quarterman*,
    573 F.3d 214 (5th Cir. 2009) ..................................... 15
*Lombardo v. United States*,
    860 F.3d 547 (7th Cir. 2017) ................................. 25, 27
*Lookingbill v. Cockrell*,
    293 F.3d 256 (5th Cir. 2002) ..................................... 12
*Mallard v. Cain*,
    515 F.3d 379 (5th Cir. 2008) ..................................... 31
*Marshall v. Lonberger*,
    459 U.S. 422 (1983) ............................................... 34
*Martinez v. Johnson*,
    255 F.3d 229 (5th Cir. 2001) ................................. 17, 21
*Martinez v. Ryan*,
    566 U.S. 1 (2012) ............................................ *passim*
*Mattheson v. Maggio*,
    714 F.2d 362 (5th Cir. 1983) ................................. 38, 39
*Miller v. Johnson*,
    200 F.3d 274 (5th Cir. 2000) ..................................... 40
*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) ............................................... 34
*Molo v. Johnson*,
    207 F.3d 773 (5th Cir. 2000) ..................................... 14
*Moon v. City of El Paso*,
    906 F.3d 352 (5th Cir. 2018) ..................................... 19
*Murphy v. Davis*,
    732 F. App'x 249 (5th Cir. 2018) ................................. 25

*Murray v. Carrier*,
  477 U.S. 478 (1986) ................................................................ 21

*Murray v. Giarratano*,
  492 U.S. 1 (1989) ............................................................... 15, 23

*Newbury v. Stephens*,
  756 F.3d 850 (5th Cir. 2014) ................................................. 30

*Olson v. United States*,
  No. 3:18-cv-1530-N-BN, 2018 WL 7133702 (N.D. Tex. Dec. 12, 2018) ............ 25

*Outler v. United States*,
  485 F.3d 1273 (11th Cir. 2007) ............................................. 12

*Palacios v. Stephens*,
  723 F.3d 600 (5th Cir. 2013) ............................................... 11

*Parke v. Raley*,
  506 U.S. 20 (1992) ...................................................... 31, 32, 39

*Pennsylvania v. Finley*,
  481 U.S. 551 (1987) ....................................................*passim*

*Prichard v. State*,
  533 S.W.3d 315 (Tex. Crim. App. 2017) .................................... 4

*Propes v. Quarterman*,
  573 F.3d 225 (5th Cir. 2009) ............................................... 12

*Rodriguez v. Thaler*,
  664 F.3d 952 (5th Cir. 2011) ................................................ 7

*Rodriguez v. United States*,
  17 F.3d 225 (8th Cir. 1994) ................................................. 33

*Ross v. Blake*,
  136 S. Ct. 1850 (2016) ..................................................... 28

*Ross v. Estelle*,
  694 F.2d 1008 (5th Cir. 1983) .............................................. 39

*Ross v. Moffitt*,
  417 U.S. 600 (1974) ........................................................ 13

*Rudd v. Johnson*,
  256 F.3d 317 (5th Cir. 2001) ............................................... 18

*Ryan v. Gonzales*,
  568 U.S. 57 (2013) ......................................................... 16

*Scott v. Johnson*,
  227 F.3d 260 (5th Cir. 2000) ........................................... 10, 14

*Segundo v. Davis*,
  831 F.3d 345 (5th Cir. 2016) ..................................................... 35, 36
*In re Sepulvado*,
  707 F.3d 550 (5th Cir. 2013) ............................................................ 19
*Sexton v. Beaudreaux*,
  138 S. Ct. 2555 (2018) ..................................................................... 29
*Shank v. Vannoy*,
  No. 16-30994, 2017 WL 6029846 (5th Cir. Oct. 26, 2017) ................. 25
*Shinn v. Ramirez*,
  No. 20-1009, 2021 WL 1951793 (May 17, 2021) ............................... 36
*Sierra v. State*,
  280 S.W.3d 250 (Tex. Crim. App. 2009) ............................................. 5
*Simmons v. Epps*,
  654 F.3d 526 (5th Cir. 2011) ........................................................... 11
*Smith v. Lucas*,
  9 F.3d 359 (5th Cir. 1993) ............................................................... 24
*Smith v. Murray*,
  477 U.S. 527 (1986) ................................................................... 29, 30
*Smith v. Puckett*,
  907 F.2d 581 (5th Cir. 1990) ........................................................... 30
*Smith v. State of Ohio Dep't of Rehab. & Corrs.*,
  463 F.3d 426 (6th Cir. 2006) ........................................................... 34
*Sones v. Hargett*,
  61 F.3d 410 (5th Cir. 1995) ............................................................. 39
*Strickland v. Washington*,
  466 U.S. 668 (1984) .............................................................. *passim*
*Swarthout v. Cooke*,
  562 U.S. 216 (2011) ................................................................... 17, 19
*Taylor v. Eppinger*,
  No. 16-4227, 2017 WL 5125666 (6th Cir. June 2, 2017) ............... 25, 27
*Taylor v. Horn*,
  504 F.3d 416 (3d Cir. 2007) ............................................................ 36
*Taylor v. Michael*,
  724 F.3d 806 (7th Cir. 2012) ........................................................... 23
*Taylor v. Owens*,
  990 F.3d 493 (6th Cir. 2021) ........................................................... 16

*Teague v. Lane,*
    489 U.S. 388 (1989) ........................................................................ 17

*Tenn. Wine & Spirits Retailers Assoc. v. Thomas,*
    139 S. Ct. 2449 (2019) ...................................................................... 4

*Tillison v. Director, TDCJ-CID,*
    No. 3:21-cv-789-X-BN, 2021 WL 2211351 (N.D. Tex. May 3, 2021) ............... 25

*Trevino v. Johnson,*
    168 F.3d 173 (5th Cir. 1999) ......................................................... 11, 18

*Trevino v. Thaler,*
    569 U.S. 413 (2013) ........................................................................ ii

*Trussell v. Bowersox,*
    447 F.3d 588 (8th Cir. 2006) ............................................................ 34

*Turner v. Quarterman,*
    481 F.3d 292 (5th Cir. 2007) ........................................................ 29-30

*United States v. Cavitt,*
    550 F.3d 430 (5th Cir. 2008) ............................................................ 37

*United States v. Cronic,*
    466 U.S. 648 (1984) .................................................................... 13, 37

*United States v. Guerrero-Robledo,*
    565 F.3d 940 (5th Cir. 2009) ........................................................ 38, 39

*United States v. Kimler,*
    167 F.3d 889 (5th Cir. 1999) ............................................................ 33

*United States v. Rivas-Lopez,*
    678 F.3d 353 (5th Cir. 2012) ............................................................ 40

*United States v. Robinson,*
    762 F. App'x 571 (10th Cir. 2019) ............................................ 25, 27, 28

*United States v. Rubio,*
    629 F.3d 490 (5th Cir. 2010) ........................................................ 31, 39

*United States v. Woods,*
    870 F.2d. 285 (5th Cir. 1989) ........................................................... 36

*Uresti v. Lynaugh,*
    821 F.2d 1099 (5th Cir. 1987) ........................................................... 36

*Wainwright v. Sykes,*
    433 U.S. 72 (1977) ........................................................................ 24

*Wainwright v. Torna,*
    455 U.S. 586 (1982) ....................................................................... 20

*Wildman v. Johnson,*
  261 F.3d 832 (9th Cir. 2001) ...............................................................30

*Williams v. Taylor,*
  529 U.S. 420 (2000) ...........................................................................35

*Ex parte Wilson,*
  716 S.W.2d 953 (Tex. Crim. App. 1986)........................................ 31-32

*Wright v. West,*
  505 U.S. 277 (1992)...............................................................................22

**Constitutional Provision, Statutes, and Rules:**

U.S. Const. amend. VI ......................................................................... 6, 13

18 U.S.C. § 3599 .......................................................................................22

28 U.S.C.:
  § 2244(b) ......................................................................................... 16
  § 2244(d) .............................................................................................7
  § 2244(d)(1)..............................................................................*passim*
  § 2244(d)(1)(A) .................................................................10, 14, 22
  § 2244(d)(1)(A)-(B) .......................................................................... 11
  § 2244(d)(1)(B) .......................................................................... 22, 23
  § 2244(d)(1)(C)-(D) ........................................................................ 10
  § 2244(d)(2) .................................................................................10, 15
  § 2254 ...........................................................................12, 22, 23
  § 2254(a) ......................................................................................... 17
  § 2254(d) ............................................................................................2
  § 2254(e)(2) ........................................................... 22, 34, 35, 36
  § 2254(e)(1) .......................................................................................34
  § 2254(i) ....................................................................................12, 18

Tex. Code Crim. Proc.:
  art. 1.051(c) ..................................................................................... 19
  art. 26.04(c) ..................................................................................... 19
  art. 11.07 ......................................................................................... 19

Tex. Penal Code:

 § 1.07(a)(17)(B)..................................................................... 4

 § 12.34(a) ............................................................................... 5

 § 12.35(c)(1) ..................................................................... 5, 40

 § 12.42(a).............................................................................. 4

 § 12.42(d) ........................................................................ 4, 40

 § 49.04(a) .............................................................................. 4

 § 49.09(b)(2) .......................................................................... 4

Tex. R. App. P. 26.2................................................................... 7

## Other Authorities:

Brian R. Means, Federal Habeas Manual (Supp. May 2021) .................................. 34

H.R. Rep. No. 104-23 (1995) ................................................................ 16

Pet.*, Shinn v. Ramirez*, No. 20-1009 ....................................................... 36

## Introduction

In 2015, Mark Moody pleaded guilty to driving while intoxicated (DWI) and, based on his multiple prior DWI convictions, was sentenced to twenty years' imprisonment. When he pleaded guilty, Moody expressly waived his right to appeal his conviction and sentence. But Moody did eventually pursue state post-conviction relief. He complained that one of the two prior DWI convictions the State used to enhance his 2015 DWI offense—a 1998 DWI conviction in Ellis County, Texas—was constitutionally infirm and ineligible to enhance his 2015 conviction because he had not validly waived counsel in 1998. Proceeding pro se, Moody raised this claim in state habeas proceedings filed over a year after his 2015 conviction became final. The Texas Court of Criminal Appeals (CCA) denied relief on that claim in 2018.

In 2019, Moody filed a federal habeas petition. Proceeding pro se, Moody again disputed the State's reliance on his 1998 DWI conviction. The district court understood Moody as challenging his 2015 guilty plea as the product of ineffective assistance of trial counsel (IATC). According to Moody, trial counsel incompetently facilitated his pleading guilty as a repeat DWI offender instead of challenging the 1998 conviction as a constitutionally infirm basis for a repeat-offense enhancement. But Moody filed his federal petition too late. As the district court explained, the federal petition was due in 2016, running one year from the time for seeking relief from his 2015 conviction.

AEDPA's one-year limitations period bars Moody's federal habeas petition unless Moody can somehow overcome the untimeliness. Three arguments have materialized. The first involves equitable tolling, which permits federal habeas petitioners

to litigate untimely claims under certain exceptional circumstances. Second, Moody suggests that he had a constitutional right to counsel in state habeas proceedings, a violation of which theoretically impeded him from timely filing a federal habeas petition. Third, Moody argues that the narrow exception to revive procedurally IATC claims recognized in *Martinez* can also excuse him from AEDPA's time bar.

Moody fails on each count. First, Moody lacks a COA on equitable tolling. The COA order makes clear that the district court's equitable-tolling ruling was indisputably correct because Moody had no newly discovered grounds for relief. This Court's recent decision in *Hughes v. Vannoy*, 7 F.4th 380 (5th Cir. 2021), is inapposite because the Court's opinion in that case addressed the application of AEDPA's relitigation bar, 28 U.S.C. § 2254(d), not any issue relevant to Moody's arguments—AEDPA's statute of limitations, *id.* § 2244(d)(1), purported constitutional rights to habeas counsel, or procedural-default rules under *Martinez*.

Second, Moody cannot rely on an alleged right to counsel in habeas proceedings to excuse his untimely petition. The U.S. Supreme Court has held that there is no constitutional right to counsel in post-conviction proceedings, and Moody identifies no exception to that rule. Moody could not seek federal habeas relief on this basis. And even if Moody could blame the lack of counsel for his failure to timely raise claims in state court, that would not excuse his failure to abide by AEDPA's separate procedural requirements in federal court.

Third, Moody cannot rely on *Martinez* to overcome limitations. *Martinez* is limited to circumstances in which a federal habeas petitioner invokes ineffective assistance of state habeas counsel to overcome the procedural default of a substantial

IATC claim. Moody cannot make *Martinez*'s threshold showing because he has not established a substantial IATC claim or that the failure to raise such a claim prejudiced him in his state habeas proceedings. Moody raised essentially the same substantive complaint about his 1998 conviction in the CCA and that court denied relief on the merits. Alternatively, Moody's underlying IATC claim is meritless because trial counsel reasonably secured the best outcome actually available for Moody given his multiple prior DWI convictions.

## Issues Presented

The Court's order granting a COA includes two issues about the timeliness of Moody's federal habeas petition: an asserted right to counsel, and the absence of binding precedent on *Martinez*'s applicability to AEDPA's statute of limitations. Moody's merits brief, however, suggests that the district court nevertheless erred in declining to toll limitations, even though equitable tolling is not included in the COA. The COA order states that the denial of equitable tolling was *not* debatable among jurists of reason. The following questions are at issue:

1. Is equitable tolling properly before this Court and, if so, did the district court abuse its discretion in denying equitable tolling?

2. Does Moody have a constitutional right to counsel in state habeas proceedings and, if so, can the lack of counsel excuse his untimely federal petition?

3. Does the narrow exception to procedural default announced in *Martinez* excuse Moody's noncompliance with AEDPA's statute of limitations?

## Statement of the Case

## I.   Moody's Conviction and Sentence

Consistent with the State's power to regulate consumption of alcoholic beverages to safeguard public health, welfare, and morals, Texas law prohibits undertaking various activities while intoxicated. *See generally Tenn. Wine & Spirits Retailers Assoc. v. Thomas*, 139 S. Ct. 2449, 2464 (2019). Because of the carnage caused by drunk drivers, Texas prohibits intoxicated persons from operating a motor vehicle in a public place. Tex. Penal Code § 49.04(a); *Hanna v. State*, 426 S.W.3d 87, 96 (Tex. Crim. App. 2014).

To deter repeat offenders, Texas enhances penalties for second and subsequent DWIs. A second conviction is a class A misdemeanor with a minimum sentence of thirty days' imprisonment. Tex. Penal Code § 49.09(a). A third conviction is a felony of the third degree, *id.* § 49.09(b)(2), which carries a sentence of up to twenty years if enhanced by a prior felony conviction, *id.* § 12.42(a). A fourth conviction designates the defendant as a "[h]abitual [f]elony [o]ffender[]" and subjects him to a prison term of twenty-five to ninety-nine years or life. *Id.* § 12.42(d).

A jury may also find that the defendant was operating his vehicle as a deadly weapon at the time of the offense. A "[d]eadly weapon" is any object—including automobiles—that by the "manner of its use" may be "capable of causing death." *Id.* § 1.07(a)(17)(B); *Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017). If the defendant is found to have used an automobile as a deadly weapon while committing a crime, *i.e.* by driving recklessly or at high speed, then that finding accompanies the judgment of conviction. *Couthren v. State*, 571 S.W.3d 786, 789-93 & n.8

(Tex. Crim. App. 2019). A deadly weapon finding has numerous adverse consequences for a defendant. It can enhance the penalty for certain offenses with two to ten years' imprisonment. Tex. Penal Code §§ 12.34(a), .35(c)(1). A deadly weapon finding also negatively impacts a defendant's "eligibility for community supervision, parole, and mandatory supervision." *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009).

Moody's struggle with sobriety behind the wheel subjected him to this regime of escalating penalties. In 1994, Moody was first convicted of DWI in Tarrant County, Texas. ROA.194. In 1998, Moody waived counsel and pleaded guilty to DWI in Ellis County. ROA.140. He was then convicted of felony DWI in 1999 and again in 2009. ROA.194. In 2015, he was yet again arrested and indicted in Tarrant County for driving a motor vehicle on a public road while intoxicated. ROA.194.

The 2015 incident placed Moody at the risk of twenty-five to ninety-nine years' or life imprisonment as a habitual DWI offender if he were convicted again, and at the risk a jury would find he used the vehicle he was driving at the time of the offense as a deadly weapon. *See* ROA.194, 196-97. Rather than roll the dice, Moody entered a plea deal with prosecutors. ROA.196-97. Texas agreed to not pursue a deadly weapon finding and to seek enhancement based on Moody's prior DWI convictions in 1994 and 1998, which would let him avoid potential life imprisonment as a habitual DWI offender. *See* ROA.194, 196-97. In exchange, Moody agreed to plead guilty to third-degree felony-enhanced DWI and be subject to a maximum term of imprisonment of twenty years. ROA.196-97.

Moody affirmed before the trial court that he "knowingly, freely, and voluntarily entered" the plea deal. ROA.200. He further affirmed that "[a]ll enhancement and habitual allegations set forth in the indictment are true and correct." ROA.202. The court accepted the plea and, on October 19, 2015, sentenced Moody to a twenty-year prison term. ROA.204-06. Moody expressly waived his right to appeal his conviction and sentence. ROA.200-02.

## II. Moody's Collateral Attacks on His Conviction and Sentence

More than two years after his 2015 felony DWI conviction, Moody filed a pro se state habeas application. ROA.132-40. In it, Moody claimed that his 2015 conviction could not properly be enhanced with the 1998 Ellis County conviction because the 1998 conviction had allegedly been obtained in violation of his constitutional right to counsel. ROA.136. Moody did not dispute that he executed a waiver of counsel in his 1998 case, but he argued that the waiver was invalid. ROA.135-37. The CCA denied his application in April 2018 without a written order. ROA.124; *see* ROA.190-93.

Moody then waited almost another year to file a federal habeas application. In March 2019, he filed a pro se habeas petition in the United States District Court for the Northern District of Texas. ROA.9-45. Moody claimed that Texas had failed to afford him legal counsel at his 1998 Ellis County DWI trial in violation of *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963). ROA.59. He argued that his Sixth Amendment rights were violated in 2015 because trial counsel failed to advise him that his assertedly uncounseled 1998 conviction could not have been used as an enhancement offense. ROA.64-65; *see* ROA.167-68. Accordingly, Moody sought vacatur of his 2015 Tarrant County conviction and a new trial. ROA.65; *see* ROA.168.

6

AEDPA imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d). At the very latest, Moody's judgment of conviction became final upon expiration of the time that he had for filing a notice of appeal on November 18, 2015, thirty days after the judgment was entered. *See* ROA.106 (citing Tex. R. App. P. 26.2). Because Moody's limitations period would have closed one year later on November 17, 2016, Moody had missed AEDPA's deadline by years. Because no events had transpired that statutorily tolled the limitations period, the Director opposed his federal habeas petition as time-barred. ROA.73-77.[2] Moody asked the district court to equitably toll the statute of limitations because his 2015 trial attorney had failed to challenge prosecutors' use of the uncounseled 1998 conviction as an enhancement. ROA.12-14, 49, 90-92.

The district court noted that the limitations period had long passed for Moody to file his federal habeas petition. ROA.106. It further found no grounds to grant Moody the extraordinary relief of equitable tolling because nothing had prevented him from timely filing his petition. ROA.107-08. The district court therefore

---

[2] Because Moody expressly waived his right to appeal his conviction, the Director argued that his time for seeking direct review expired on the date of sentencing, October 19, 2015. ROA.77. The district court ruled that Moody's limitations period began on November 18, 2015, upon expiration of Texas's 30-day statutory appeal period. ROA.106 n.4. Under this Court's precedent, however, when the waiver of a right to appeal is an express term of the plea agreement, then limitations starts running from the day the defendant is sentenced. *See Rodriguez v. Thaler*, 664 F.3d 952, 954 (5th Cir. 2011). But the Court need not resolve the district court's error because, assuming *arguendo* that Moody's limitations period began running upon the expiration of his statutory appeal period, his federal habeas petition was still untimely.

declined to equitably toll AEDPA's statute of limitations, dismissed Moody's petition as time-barred, and denied a certificate of appealability (COA). ROA.107-10.

This appeal followed. Moody filed a pro se COA application to challenge the dismissal of his federal petition as time-barred. In July 2021, this Court appointed counsel and granted Moody a COA on two issues: (1) whether there is an exception to the constitutional rule that the right to counsel does not apply to post-conviction proceedings in cases where post-conviction proceedings are the first opportunity to raise an IATC claim, and (2) whether *Martinez* can excuse a petitioner's failure to comply with AEDPA's statute of limitations. Although the Court denied a COA on equitable tolling, Moody's appointed counsel revisited the issue in his merits brief.

## Summary of the Argument

**I.** Moody lacks a COA to challenge the district court's denial of equitable tolling for Moody's time-barred IATC claim, and thus this Court lacks jurisdiction to revisit that denial. In any event, the district court's denial of equitable tolling was well within the exercise of sound discretion.

**II.** Moody had no constitutional right to court-appointed state habeas counsel. Thus, Moody cannot complain of the denial of state habeas counsel to overcome the untimeliness of his federal habeas claim. Such claims are not cognizable in federal court. And even if they were, lack of counsel in state court would not explain Moody's failure to comply with the habeas rules applicable in federal court.

**III.** *Martinez* does not excuse petitioners from following AEDPA's statute of limitations. Indeed, accepting Moody's argument would create a split with at least five other Circuits. Even if Moody's proposed extension had some merit, Moody

cannot satisfy the basic requirements of *Martinez*. In addition to showing that his IATC claim was substantial, *Martinez* requires Moody to show the failure to raise his new IATC claim in state habeas proceedings prejudiced him under *Strickland v. Washington*, 466 U.S. 668 (1984). The record defeats that possibility because, in state court, the CCA rejected essentially the same challenge to Moody's 1998 plea that Moody has now repackaged into an IATC claim. Moody cannot make the necessary showing of actual prejudice under *Martinez* because his claim would not have fared any better if presented by state habeas counsel. Alternatively, the Court may affirm on the ground that Moody's IATC claim is meritless because counsel performed effectively in 2015 by facilitating the best plea deal actually available.

## Standard of Review

The Court "review[s] the district court's findings of fact for clear error and its conclusions of law de novo," and "may affirm on any ground supported by the record." *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013).

## Argument

Moody's claim is time-barred. AEDPA establishes a 1-year limitations period for a state prisoner to file a federal petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. *Id.* § 2244(d)(2). But Moody's state habeas application, filed on December 21, 2017, after AEDPA's statute of limitations had already expired, did not toll the limitations period. ROA.106 (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000)). The district court correctly found Moody's petition time-barred based on AEDPA's relevant statutory limitations trigger, which is the date on which Moody's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A).

Moody's attempts to avoid that result fail. There is no basis for this Court to revisit equitable tolling, which the district court correctly rejected. Nor can Moody show any statutory limitations exception. Moody does not argue that his federal habeas petition relies on a new constitutional right or facts that could not have been previously discovered. *See id.* § 2244(d)(1)(C)-(D). The only argument raised by Moody is that lack of counsel in state habeas proceedings somehow excuses his untimely federal habeas petition. But because Moody has no right to counsel in habeas proceedings, he cannot show that limitations should have run from the denial of state habeas relief or that the State created any impediment to his filing a federal habeas

petition. *See id.* § 2244(d)(1)(A)-(B). Nor can Moody rely on *Martinez*'s limited equitable exception to procedural default to avoid these statutory requirements. *Martinez* does not apply to AEDPA's statute of limitations. Other circuit courts that have considered similar arguments have declined to so hold, and this Court should not create a circuit split by being the first to hold otherwise. Moreover, Moody cannot benefit from *Martinez* because he was not actually prejudiced by the lack of counsel in state habeas proceedings and because his underlying IATC claim is meritless.

## I.   Moody Cannot Revive His Meritless Bid for Equitable Tolling.

Moody does not appear to dispute that the district court applied the correct AEDPA limitations provisions. Instead, he appears to suggest that the district court erred by not equitably tolling the limitations period. Appellant's Br. 9. That argument cannot succeed because this Court already rejected it in denying a COA. *See* COA Op. 2. Because equitable tolling is beyond the scope of the COA, this Court lacks jurisdiction to consider it. *See Simmons v. Epps*, 654 F.3d 526, 535 (5th Cir. 2011) (per curiam); *Trevino v. Johnson*, 168 F.3d 173, 177 (5th Cir. 1999).

In any case, it is manifest that "the district court's rejection of Moody's equitable tolling argument" was correct. COA Op. 2 (citing *Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013)). A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Moody indisputably had knowledge of the factual predicate of his claims over a year before his federal habeas petition was due. The district court found

that Moody's petition was due November 17, 2016. ROA.108. On October 23, 2015,

Moody wrote to counsel in his 2015 case complaining about the plea deal in light of

the 1998 conviction. ROA.44. Moody attached counsel's response, dated October

28, 2015, to his federal habeas petition. ROA.44.

Furthermore, Moody's pro se status is insufficient to equitably toll the AEDPA

statute of limitations. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 n.14 (5th Cir. 2002).

The fact that Moody was required to raise his IATC claim on collateral review (and

thus without the assistance of counsel in a non-capital case) is the norm, not extraor-

dinary. *See Fisher v. Johnson*, 174 F.3d 710, 713 & n.11 (5th Cir. 1999) (stating that

conditions that affect many prisoners are not considered "rare"). As with any liti-

gant, pro se litigants "are deemed to know of the one-year statute of limitations."

*Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007) (per curiam); *see also*

*Propes v. Quarterman*, 573 F.3d 225, 232 (5th Cir. 2009) (explaining that "a *pro se*

inmate must also be aware of the entire array of procedural requirements").

## II.  Moody Failed to Establish a Constitutional Right to Counsel in Habeas Proceedings, Let Alone One Excusing His Untimely Federal Petition.

Moody's argument about counsel in post-conviction review affords him no relief

in federal habeas proceedings. The Supreme Court has long recognized that there is

no constitutional right to counsel in state post-conviction proceedings. *See Coleman*,

501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987). The ineffective-

ness of counsel during federal or state collateral post-conviction proceedings is not

grounds for relief in a section 2254 proceeding. 28 U.S.C. § 2254(i). And because a

petitioner has no constitutional right to counsel in post-conviction proceedings, a

petitioner cannot invoke any alleged ineffective assistance of such counsel. *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995); *see also In re Goff*, 250 F.3d 273, 275 (5th Cir. 2001) (per curiam) ("The Supreme Court has explicitly held that there is no protected Sixth Amendment right to counsel in state post-conviction proceedings."). Because the right Moody seeks is not cognizable in federal habeas court, he cannot invoke a lack of state habeas counsel to avoid his time-barred federal habeas petition.

## A. There is no constitutional right to counsel in habeas proceedings.

The right to trial counsel is foundational in criminal trials. *United States v. Cronic*, 466 U.S. 648, 654-56 (1984). It protects the rights of persons charged with criminal offenses by subjecting the government's case to adversarial testing. *Martinez*, 566 U.S. at 12. And it is for that reason that the U.S. Supreme Court has long recognized that each indigent criminal defendant must be afforded the opportunity to receive counsel at court expense lest he "face his accusers without a lawyer to assist him." *Gideon*, 372 U.S. at 344. But this framework shifts after conviction. A State need provide indigent defendants with counsel on direct appeal only if it makes such proceedings available, which itself is not required by the Constitution. *See Halbert v. Michigan*, 545 U.S. 605, 609-11 (2005); *Ross v. Moffitt*, 417 U.S. 600, 614-19 (1974). And the U.S. Supreme Court has consistently declined to find a constitutional right to counsel in collateral proceedings attacking a criminal conviction. *See, e.g.*, *Finley*, 481 U.S. at 555-57.

Moody contends, however, that there is an exception to this general rule when habeas provides an appellant with his first opportunity to challenge his conviction on the grounds of ineffective assistance of trial counsel. Appellant's Br. 12. As a result,

Moody suggests that his federal habeas petition is timely under the theory that he filed it within a year of the CCA's denial of his pro se state habeas application. ROA.106 n.5. As best the Director can tell, Moody also argues that the state habeas proceeding constitutes the "direct review" of his conviction, delaying AEDPA's limitations period until that process is complete, 28 U.S.C. § 2244(d)(1)(A). Even assuming this argument might help some defendants, it cannot help Moody, who waived direct review and filed his state habeas application well after AEDPA's one-year limitations period had already run. *See* ROA.106, 200. Moody's "state habeas application filed on December 21, 2017, after limitations had already expired," could not have "operate[d] to toll the limitations period." ROA.106 (citing *Scott*, 227 F.3d at 263). But this argument also fails for multiple other reasons.

*First*, Moody's argument is contrary to this Court's precedent. Even when state law confers a right to counsel in state proceedings, "[a]n alleged violation of that right does not toll the AEDPA's statute of limitations." *Molo v. Johnson*, 207 F.3d 773, 775 & n.8 (5th Cir. 2000) (per curiam) (denial of a right to effective assistance of counsel on a first appeal does not toll AEDPA's limitations period). And, as the district court noted, the argument that limitations does not begin to run until petitioners commence state habeas proceedings has been "specifically rejected" by this Court. ROA.106 n.5. "The operative date for limitations purposes under subsection (A) is when the conviction becomes final by the conclusion of direct review or *the expiration of the time for seeking such review*, not upon the completion of state habeas review." ROA.106 n.5 (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998)). As *Flanagan* explains, the limitations period may run before the filing of a

request for habeas relief in the state courts. *Flanagan*, 154 F.3d at 199 n.1. AEDPA provides no textual basis for tolling based on which *claims* are raised in such proceedings. *Cf., e.g.*, *Gonzalez v. Thaler*, 623 F.3d 222, 225 (5th Cir. 2010), *aff'd*, 565 U.S. 134 (2012) (rejecting argument that "would be contrary to the plain language of the statute"). And Moody's argument would improperly render section 2244(d)(2)—tolling limitations for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending"—mere surplusage. *Cf., e.g.*, *Leal Garcia v. Quarterman*, 573 F.3d 214, 221 (5th Cir. 2009) (rejecting interpretation of AEDPA provision that would be "rendered surplusage" under the challenger's view).

*Second*, no case law supports Moody's theory. The reason why is manifest: States are not constitutionally required to provide post-conviction review *at all*. Neither the Constitution nor federal law requires that States provide post-conviction remedies. *See Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001) (holding that the Constitution does not require States to provide post-conviction remedies); *see also Murray v. Giarratano*, 492 U.S. 1, 10 (1989) (plurality op.) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal."). Because States are not constitutionally required to provide habeas review, it follows that they are not constitutionally required to provide corresponding counsel. Insofar as lack of counsel limits pro se petitioners in pressing state habeas claim, that is hardly inconsistent with restrictions on prisoners seeking federal

habeas relief. Indeed, Congress passed AEDPA to "reduce the abuse of habeas corpus that results from delayed and repetitive filings." H.R. Rep. No. 104-23, at 9 (1995).

*Third*, accepting Moody's argument—recognizing a novel constitutional right to habeas counsel—would unleash a groundswell of litigation in defiance of AEDPA's intended objective of respecting finality, comity, and federalism. *Davila*, 137 S. Ct. at 2064. Federal habeas review already represents an extreme intrusion into state sovereignty. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011). Further federal interference would undermine AEDPA's goal of reducing "delays in the execution of state and federal criminal sentences." *Ryan v. Gonzales*, 568 U.S. 57, 76 (2013). It would also upset the constitutional separation of powers, under which Congress alone may expand the scope of relief or protections offered in federal habeas review. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1974 n.20 (2020); *Taylor v. Owens*, 990 F.3d 493, 495 (6th Cir. 2021); *Cobb v. Thaler*, 682 F.3d 364, 377 (5th. Cir. 2012); *see also Edwards v. Vannoy*, 141 S. Ct. 1547, 1566-70 (2021) (Gorsuch, J., concurring) (discussing changing scope of habeas that Congress permitted in federal courts starting in 1789). AEDPA does not enlarge the right to counsel beyond its constitutional scope to encompass collateral review.

*Fourth*, constitutionalizing habeas counsel would risk significant harm to State interests. Injecting such a rule into settled state post-conviction review practice would frustrate "AEDPA's own purposes," which the U.S. Supreme Court has said in the related context of section 2244(b), include to "conserve judicial resources, reduce piecemeal litigation, and lend finality to state court judgments within a

reasonable time." *Banister v. Davis*, 140 S. Ct. 1698, 1706 (2020) (cleaned up). This Court should decline Moody's invitation to so encumber the courts and interfere with the State's administration of criminal justice.

*Fifth*, even if this Court were to cut a new constitutional right to effective assistance of habeas counsel from whole cloth, it could not benefit Moody under non-retroactivity principles. As a new right under *Teague v. Lane*, 489 U.S. 388, 305-11 (1989) (plurality op.), the right Moody seeks is of no use to him because it cannot apply retroactively. *See Edwards*, 141 S. Ct. at 1555. Thus, Moody's lack of state habeas counsel could not excuse his untimely federal habeas petition.

## B. No deprivation of counsel in *state* habeas court would excuse Moody's untimeliness in *federal* habeas court.

Because state habeas proceedings are not required under the Constitution or federal law, any errors occurring during a state habeas proceeding are not cognizable in a federal habeas petition. *See, e.g.*, *In re Gentras*, 666 F.3d 910, 911 (5th Cir. 2012) (per curiam); *Martinez v. Johnson*, 255 F.3d 229, 245 (5th Cir. 2001). Proper grounds for a federal habeas petition are limited to claims that a state conviction or state custody violates the Constitution or federal law. *See* 28 U.S.C. § 2254(a) (federal court entertains petition for writ of habeas corpus challenging state court conviction only if petitioner claims that his custody violates the Constitution or federal laws); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) (noting that federal habeas relief is not available for violations of state law).

Infirmities in state habeas proceedings do not constitute grounds for relief in federal habeas petitions because an attack on the state habeas proceeding is an attack

on a proceeding collateral to the detention, not the detention itself. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001). Demonstrating a flaw in state habeas proceedings is not proof that the underlying conviction is constitutionally infirm. This Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings." *See Trevino*, 168 F.3d at 180. And Moody's complaints about lack of state habeas counsel are equally unhelpful to his attempt to avoid AEDPA's limitations period.

### 1. A complaint that Moody was deprived state habeas counsel is not cognizable in federal court.

Moody's argument rests entirely on the deprivation of effective assistance of counsel in post-conviction proceedings. The Supreme Court has made clear that there is no constitutional right to counsel in state post-conviction proceedings. *Finley*, 481 U.S. at 555-57; *see Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001). Through AEDPA, Congress also bars a federal habeas claim grounded in "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings." 28 U.S.C. § 2254(i). It is thus "well-settled" that "'infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.'" *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003). It is beyond dispute that deprivation of state habeas counsel alone provides no path to relief.

Even if the federal constitution *required* States to provide indigent defendants with counsel during habeas proceedings, the Constitution still would not require that the counsel be effective. States retain broad discretion as to the forms of assistance they afford to inmates on collateral review. *See, e.g., Dist. Atty's Off. for Third Jud.*

*Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009); *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). Given that States need not offer *any* assistance, the United States Supreme Court has been reticent to find the assistance they do provide to be constitutionally inadequate. *E.g.*, *Cooke*, 562 U.S. at 220-21. And it has admonished courts against attaching familiar pre-conviction trial rights such as the right to effective assistance of counsel to state collateral-review proceedings. *Osborne,* 557 U.S. at 68.

Moody cannot complain about state law insofar as it did not provide the counsel Moody seeks. Texas law provides petitioners like Moody a vehicle for raising complaints about the effectiveness of trial counsel via post-conviction relief: an application for a writ of habeas corpus under Article 11.07 of the Code of Criminal Procedure. But indigent defendants have no right to counsel in such proceedings. *See In re Sepulvado*, 707 F.3d 550, 556 (5th Cir. 2013). Texas law requires appointment of counsel on habeas only when the trial judge determines that the interests of justice require it. *See, e.g.*, *Ex parte Garcia*, 486 S.W.3d 565, 565 & n.1 (Tex. Crim. App. 2016) (Keller, P.J., concurring) (citing Tex. Code Crim. Proc. arts. 1.051(c), 26.04(c)). But Texas has consistently "decline[d] to turn a legislative act of grace into a constitutional right." *Ex parte Graves*, 70 S.W.3d 103, 113 (Tex. Crim. App. 2002). Absent a constitutional right to such counsel, Moody's argument is grounded in a complaint about a State's failure to extend federal law. Such complaints are not cognizable in federal habeas court. *See Estelle v. McGuire*, 502 U.S. 62, 67-71 (1991); *Langley v. Prince*, 926 F.3d 145, 159-60 (5th Cir. 2019) (en banc); *Garcia v. Stephens*, 793 F.3d 513, 520 (5th Cir. 2015).

Thus, Moody had no right to *effective assistance* of counsel to help him meet post-conviction deadlines, whether in state or federal court. Moody suggests (at 10-11) that it was his trial attorney's error that led to the late filing of his state habeas petition, which consequently led to the late filing and procedural default of his federal habeas claims. But a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (where there is no constitutional right to counsel there can be no deprivation of effective assistance). Moody's dispute about counsel's performance does not amount to a constitutional violation, and therefore he must "bear the risk of attorney error that results in a procedural default." *Coleman*, 501 U.S. at 752-53.

Contrary to Moody's assertion (at 10-11) this Court did not hold otherwise in *Hughes*. Moody confuses the reasonableness of rejecting the merits of an IATC claim with grounds for tolling limitations. Appellant's Br. 10 (citing *Hughes*, 7 F.4th at 387). Because Moody never presented his IATC claim in state habeas proceedings, the state habeas error discussed in *Hughes* cannot demonstrate any "incorrect finding" below. *Id.* Moreover, given the Supreme Court's pronouncements that there is no constitutional right to habeas counsel, tolling for the "absence of effective counsel" is not so "well understood and comprehended in existing law beyond any possibility for fair-minded [sic] disagreement." *Id.* at 10-11 (quoting *Hughes*, 7 F.4th at

387). Moody thus falls under the general rule that "ineffective assistance of habeas counsel cannot provide cause for a procedural default." *Martinez*, 255 F.3d at 241.[3]

### 2. Lack of state habeas counsel could not excuse missing the federal habeas deadline.

In any event, alleged entitlement to state habeas counsel could not possibly justify Moody's failure to comply with AEDPA. Requirements imposed by AEDPA are fundamentally different than those governing state habeas proceedings. The former concerns Congress's limitations on inmates seeking federal habeas relief. The latter concerns the resources a State must provide an indigent defendant in post-conviction proceedings. Moody's contrary argument fails for at least three reasons.

*First*, Moody has not adequately preserved his argument. Moody's failure to raise his argument first in state court precludes his reliance on it here. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (explaining that a petitioner who uses a claim as "cause" to excuse a procedural default must properly raise that claim in state court); *see also Murray v. Carrier*, 477 U.S. 478, 489 (1986) (claim must be independently raised in state court before using it as "cause" to excuse procedural default). Nor can Moody explain away his failure to challenge the lack of state habeas counsel in a timely federal habeas petition.

---

[3] Contrary to Moody's suggestion (at 12), *Hughes* yields no support for his claim when read in conjunction with Justice Scalia's dissent in *Martinez*. Not only does Moody's reliance on *Martinez* fail for the reasons explained in Part III, *infra*, the language on which Moody relies confirms that *Martinez* does *not* create a "constitutional right to counsel in initial-review state habeas." 566 U.S. at 18 (Scalia, J., dissenting).

*Second*, even if Moody had been entitled to counsel in state habeas proceedings, there was no right to such counsel to bring a federal habeas case. There is no constitutional right to counsel in *federal* habeas proceedings. *Wright v. West*, 505 U.S. 277, 293 (1992) (the Constitution "guarantees no right to counsel on habeas"); *see also Elizalde v. Dretke*, 362 F.3d 323, 329 (5th Cir. 2004) (same); *Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir. 1992) (same). Congress provided a *statutory* right to counsel for death-sentenced prisoners under 18 U.S.C. § 3599, which "entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings." *Christeson v. Roper*, 574 U.S. 373, 377 (2015) (per curiam). But that statute would not apply to Moody's DWI case. Moody does not contend that the district court was constitutionally required to appoint counsel to assist him with filing a timely federal habeas petition—nor could he without functionally contending that appointed counsel is required in every federal habeas case.[4]

*Third*, Moody's arguments are unhelpful in avoiding AEDPA's statutory triggers. Moody cannot avoid the plain text of section 2244(d)(1)(A) for the reasons explained by the district court (ROA.105-06) and in Part II.A, *supra*. As the district court indicated, the remaining statutory triggers are inapplicable here. *See* ROA.105. To delay the running of AEDPA's statute of limitations, section 2244(d)(1)(B)

---

[4] Rule 8(c) of the Rules Governing Section 2254 Cases requires that counsel be appointed if the habeas petition raises issues that mandate an evidentiary hearing. Here, there are no factual issues requiring an evidentiary hearing. Indeed, any evidentiary hearing would be barred by AEDPA because Moody did not diligently develop his claim in state court. *See* 28 U.S.C. § 2254(e)(2). And any such appointment could not have cured Moody's already untimely petition.

requires state action that both "violat[ed] . . . the Constitution or laws of the United States" and "prevented [the prisoner] from filing" his federal petition. 28 U.S.C. § 2244(d)(1)(B). Moody cannot avoid AEDPA on that basis because the U.S. Supreme Court has held that prisoners have no constitutional right to post-conviction counsel. *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007); *Giarratano*, 492 U.S. at 10, 12; *Finley*, 481 U.S. at 555-57. Thus, a State's failure to appoint such counsel is not a "violation of the Constitution or laws of the United States," as required by § 2244(d)(1)(B). Likewise, Moody has not shown that Texas created any impediment to filing his section 2254 petition. Even "incompetent" performance by appointed state habeas counsel "is not the type of State impediment envisioned in § 2244(d)(1)(B)." *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005); *see also Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2012) (explaining that even though the petitioner "either misunderstood his attorney's advice, or his attorney gave him bad advice," failure to ascertain the correct deadline was attributable to the petitioner). Moody has pointed to no federal statute or constitutional provision that Texas violated by failing to guarantee counsel for Moody's state habeas proceedings. Nor has Moody demonstrated how any State action actually prevented him from timely filing a section 2254 petition in federal court.

Thus, even if Moody were entitled to the state habeas representation he seeks, nothing provides a path to relief in this Court. The federal habeas writ provides only one remedy: releasing an inmate held in violation of the Constitution. *See Fay v. Noia*, 372 U.S. 391, 430-31 (1963) ("Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to

release him. Indeed, it has no other power[.]"), *overruled in part by Wainwright v. Sykes*, 433 U.S. 72 (1977); *Smith v. Lucas*, 9 F.3d 359, 366 (5th Cir. 1993). This Court would have no power to order a State to reconvene counseled habeas proceedings. And because Moody's asserted right to counsel does not impact any of AEDPA's limitations triggers, this Court cannot provide any relief that Moody requests.

### III. *Martinez*'s Procedural-Default Rule Does Not Apply to AEDPA's Statute of Limitations or Allow Moody to Litigate His Meritless Claim.

Although the Supreme Court recognized an equitable exception to the procedural default doctrine based on ineffective assistance of post-conviction counsel in *Martinez*, the Court's ruling in *Finley*, that there is no freestanding constitutional right to effective assistance of counsel in post-conviction proceedings, remains the law. Moody thus cannot rely on *Martinez* to avoid AEDPA's time bar. Nor can Moody satisfy the conditions necessary to proceed under *Martinez* because his claim is ultimately meritless, which provides an alternative basis to affirm.

### A. *Martinez* does not apply to 28 U.S.C. § 2244(d)(1).

*Martinez* recognized a "narrow exception" to *court-created* rules for procedural default, and that exception lifts the bar on considering defaulted *claims* if state habeas counsel was ineffective for not raising a substantial IATC claim. 566 U.S. at 9. But that exception does not affect AEDPA's independent *statutory* bar imposing a one-year limitations period. Indeed, the *Martinez* Court explained that the "rule of *Coleman*" concerning counsel "governs in all but the limited circumstances recognized here." *Id.* at 16. *Martinez* did not address timeliness under section 2244(d)(1) of AEDPA. In *Davila*, the Court refused to extend *Martinez* and

confirmed that "[e]xpanding the narrow exception announced in *Martinez* would unduly aggravate the 'special costs on our federal system' that federal habeas review already imposes." *Davila*, 137 S. Ct. at 2070 (citation omitted); *accord Ibarra v. Davis*, 738 F. App'x 814, 818-19 & n.4 (5th Cir. 2018) (per curiam).

The circuit courts have likewise refused to extend *Martinez* to excuse inmates from complying with the AEDPA limitations period. The Eleventh Circuit was the first to hold so in *Arthur v. Thomas*, 739 F.3d 611 (11th Cir. 2014). Other courts of appeals that have since considered the question have arrived at the same conclusion. *United States v. Robinson*, 762 F. App'x 571, 574-76 (10th Cir. 2019); *Lombardo v. United States*, 860 F.3d 547, 557-58 (7th Cir. 2017); *Taylor v. Eppinger*, No. 16-4227, 2017 WL 5125666, at *2 (6th Cir. June 2, 2017); *Bland v. Superintendent Greene SCI*, No. 16-3457, 2017 WL 3897066, at *1 (3d Cir. Jan. 5, 2017). And this Court has also aligned itself with these conclusions in several unpublished opinions. *E.g.*, *Murphy v. Davis*, 732 F. App'x 249, 256-57 (5th Cir. 2018) (per curiam); *Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) (Higginson, J.). Moreover, various district courts within this Circuit have consistently arrived at essentially the same conclusion: *Martinez* provides no excuse for failure to comply with the federal habeas limitations period under AEDPA. *See, e.g.*, *Tillison v. Director, TDCJ-CID*, No. 3:21-cv-789-X-BN, 2021 WL 2211351 (N.D. Tex. May 3, 2021); *Olson v. United States*, No. 3:18-cv-1530-N-BN, 2018 WL 7133702 (N.D. Tex. Dec. 12, 2018); *Dickerson v. Davis*, No. 4:17-cv-71-A, 2018 WL 2431846, at *3 (N.D. Tex. May 30, 2018).

These cases are manifestly correct. Courts have overwhelmingly held that *Martinez* does not excuse federal habeas petitions that are untimely filed under AEDPA. And Moody offers no reason for this Court to create a circuit split on the application of *Martinez* to federal statutes of limitations.

Even if the Court considers the issue anew, it should reach the same result. Consider *Arthur*. Arthur failed to timely petition the United States Supreme Court for a writ of certiorari, so his conviction became final on June 18, 1998. *Arthur*, 739 F.3d at 618. Under AEDPA, he had until June 18, 1999, to file his federal habeas petition. He did not file it until January 25, 2001. *Id.* at 619. The district court dismissed Arthur's petition as untimely because limitations was not tolled for lack of appointed appellate counsel. *Id.* at 622-23. The Eleventh Circuit affirmed the district court's dismissal, the Supreme Court denied certiorari, and Alabama set an execution date. *Id.* at 623-25. Days before his execution date, Arthur filed a Rule 60(b) motion in district court arguing that the Supreme Court's then-recent holding in *Martinez* excused his 2001 federal habeas petition from AEDPA's statute of limitations because he had alleged ineffective assistance of counsel. *Id.* at 627. The district court denied the motion. And the Eleventh Circuit affirmed because it read *Martinez* to have announced only a narrow exception to *Coleman*'s procedural-default rule, not AEDPA's *federal* statute of limitations that was entirely independent of any state procedural rule. *Id.* at 628-30.

At least four other circuits have followed a similar reading of *Martinez*. The Third Circuit invoked *Arthur*'s reasoning in *Bland*, 2017 WL 3897066, at *1. There, the court of appeals summarily denied the appellant a COA because his federal

habeas petition was filed nearly seventeen years after its deadline under AEDPA's trigger and so was time-barred. *Id.* The court cited *Arthur* for the proposition that *Martinez* does not entitle a federal habeas petitioner to equitable tolling because "*Martinez* has nothing to do with the governing statute of limitations and cannot excuse a failure to file within the limitations period." *Id.* (citing *Arthur*, 739 F.3d at 630). The Sixth Circuit independently arrived at the same conclusion. *Eppinger*, 2017 WL 5125666.

The Seventh Circuit followed suit in *Lombardo*. Lombardo was convicted of racketeering, conspiracy, and murder. *Lombardo*, 860 F.3d at 550. The district court sentenced him to life in prison, the Seventh Circuit affirmed, and the Supreme Court denied certiorari. *Id.* More than a year later, Lombardo untimely filed a habeas motion arguing ineffective assistance of trial counsel. *Id.* at 550-51. He admitted his motion was untimely but argued that the AEDPA statute of limitations had been tolled under *Martinez* due to ineffective assistance of counsel. *Id.* at 551. The district court and court of appeals rejected that argument and found no extraordinary circumstances warranting equitable tolling. *Id.* at 551-55. The Seventh Circuit emphasized that even state prisoners who establish cause and prejudice to excuse a procedural default under *Martinez* "must still file their petition in federal court within the statute of limitations." *Id.* at 557. The court read *Martinez* to "emphatically" limit its holding to the narrow context before it and expressly followed *Arthur* in declining to extend it. *Id.* at 558.

The Tenth Circuit followed the same narrow reading of *Martinez* in the related context of an inmate in federal custody. In *Robinson*, a career offender imprisoned on

a drug distribution offense argued that *Martinez* authorized him to file an untimely 2255 habeas petition when he alleged ineffective assistance of counsel. 762 F. App'x at 574. The district court and the court of appeals disagreed, with the latter stating that "courts applying the rubric of *Martinez*" have "uniformly rejected the proposition that its 'narrow' procedural default exception pertains to a petition's timeliness." *Id.* at 576 (citing *Arthur*, 739 F.3d at 630).

This ample body of persuasive authority is reason enough to reject Moody's argument. But reading *Martinez* as Moody envisions would also violate the Supreme Court's statutory-interpretation precedent. For instance, applying *Martinez* here would conflict with *Ross v. Blake*, 136 S. Ct. 1850 (2016), which explained how judge-made rules interact with statutory requirements like AEDPA's statute of limitations. Procedural default is an equitable, "judge-made . . . doctrine[]," *id.* at 1857; so "[t]he rules for when a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of the *Court's discretion*," *Martinez*, 566 U.S. at 13 (emphasis added). But AEDPA imposes a body of statutory requirements, so it "stands on a different footing." *Ross*, 136 S. Ct. at 1857. "Congress set[] the rule[]" and left no role for the courts. *Id.* "For that reason," AEDPA's statutory triggers "foreclos[e] judicial discretion" to create new ones. *See id.*

## B.   Moody does not satisfy the conditions of *Martinez*.

Moody lacks a substantial ineffective-assistance claim whose absence prejudiced him in state habeas proceedings. When it applies, *Martinez* requires a habeas petitioner to show that his state habeas counsel was ineffective under the *Strickland* standard for failing to present an IATC claim in state habeas proceedings. *Martinez*,

566 U.S. at 14. Moody cannot make that showing, so *Martinez* could not excuse his failure to file suit within the statute of limitations.

Under *Strickland*, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Those circumstances include "the . . . state of the law" at the time, which informs what claims are "worth pursuing." *Smith v. Murray*, 477 U.S. 527, 536 (1986). In applying this standard, courts must "affirmatively entertain the range of possible 'reasons . . . counsel may have had for proceeding as they did.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (citation and alteration omitted).

Moody contends that he received ineffective assistance of trial counsel because trial counsel failed to object to enhancement based on the 1998 conviction on the basis that Moody was unrepresented in the 1998 case. But in light of the CCA's rejection of his underlying constitutional claim, this argument fails for purposes of *Martinez*. Even if appointed, state habeas counsel could never have been objectively unreasonable to forego a state habeas claim that "would have failed." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018) (per curiam); *see also Richter*, 562 U.S. at 110 ("[A]n attorney may not be faulted for a reasonable miscalculation."). The state habeas trial court found, and the CCA agreed, that Moody's challenge to his 1998 conviction failed. ROA.124, 189, 193. This conclusive determination from the CCA on Moody's constitutional argument shows that any claim recasting the failure onto trial counsel "would have been meritless." *Turner v. Quarterman*, 481 F.3d 292, 298

(5th Cir. 2007). "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *see also Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) (holding that failure to raise meritless argument on appeal cannot sustain an ineffective-assistance claim). "Viewed in light of" the facts and the "law at the time," no failure to raise his current IATC claim in state habeas could have fallen outside the "'wide range of professionally competent assistance.'" *Smith*, 477 U.S. at 536 (quoting *Strickland*, 466 U.S. at 690).

Nor can Moody show actual prejudice because his IATC claim is no stronger than the meritless claim he unsuccessfully raised in state habeas proceedings. To show prejudice, Moody must show a reasonable probability that the CCA would have granted relief on the IATC claim. *See Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014) (per curiam). Moody's IATC claim essentially repackages his state habeas claim that the Constitution barred the State from using his 1998 guilty plea and conviction to enhance his 2015 DWI charge. The CCA rejected that claim, so it necessarily would have rejected the attendant claim that Moody's 2015 trial counsel was constitutionally ineffective for failing to raise it. *See* ROA.124; ROA.190-93. Moody thus cannot make the necessary prejudice showing under *Martinez*.

Moody nevertheless argues that 2015 trial counsel should have somehow disputed his 1998 conviction because he purportedly never validly waived counsel before pleading guilty in 1998. But counsel could not have been objectively *unreasonable* for failing to challenge Moody's facially valid 1998 conviction because neither the law nor the record were favorable to such a claim.

Under Moody's view, *Burgett v. Texas*, 389 U.S. 109 (1967), extends the holding in *Gideon* to prohibit the use of an uncounseled prior conviction to enhance any subsequent conviction. *Id.* at 115. But that argument is contrary to precedent. *Burgett* does not "stand[ ] for the proposition that every previous conviction used to enhance punishment is 'presumptively void' if waiver of a claimed constitutional right does not appear from the face of the record." *Parke v. Raley*, 506 U.S. 20, 31 (1992). In *Parke*, the Supreme Court distinguished *Burgett* because, in *Burgett*, "state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess." *Id.* Moody's right to counsel was firmly established when he pleaded guilty to DWI in 1998. Accordingly, it would have been "permissible to assume" even from "a silent record" that Moody had validly waived counsel in 1998. *Id.*

But Moody faced an even higher hurdle: it was his burden "to prove that he did not competently and intelligently waive his right to the assistance of counsel" in 1998. *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis added). Under Texas law, "[t]he burden of proof in a collateral attack on a conviction is on the applicant," *United States v. Rubio*, 629 F.3d 490, 493 (5th Cir. 2010) (quoting *Ex parte Guzman*, 589 S.W.2d 461 (Tex. Crim. App. 1979)), and it is "state law, not federal law, [that] allocates the appropriate burden of proof," *Mallard v. Cain*, 515 F.3d 379, 382 (5th Cir. 2008). Therefore, *Moody* had "the burden of proving that he did not waive counsel prior to plea negotiations." *Id.* And "Texas law holds that, absent a showing to the contrary, there is a presumption of regularity to a judgment and proceeding once a defendant pleads guilty." *Id.* at 494 (citing *Ex parte Wilson*, 716 S.W.2d 953, 956

(Tex. Crim. App. 1986)). "When, as in this case, the federal constitutional right to counsel was firmly established in the state, a defendant must do more than merely say he was not offered counsel to satisfy his burden." *Id.* (citing *Wilson*, 716 S.W.2d at 956). Moody's contrary arguments "fail[] to satisfy the burden of proof necessary to sustain a claim of invalid waiver of counsel." *Id.*

Given that the right to counsel was well-established and Moody had expressly waived counsel in 1998, any collateral challenge to Moody's 1998 conviction faced a virtually unsurmountable burden. The waiver of counsel accompanying Moody's 1998 conviction states:

> NOW COMES the undersigned defendant in this cause and represents to the Court that he/she has no attorney, and after being advised by the Court of the dangers and disadvantages of self-representation, that he/she does not intend to employ counsel herein, and that he/she waives any right he/she may have, on application therefor, to have the Court appoint an attorney to defend him/her in this cause . . . .

> WHEREFORE, PREMISES CONSIDERED, defendant prays the Court to proceed immediately on the filing hereof to arraign him/her in this cause, to accept his/her plea of guilty[] . . . and waiver of trial by jury, to enter judgment thereof, and having entered the same, to immediately sentence him/her in the manner provided by law, waiving for said purpose every provision of law the effect of which would delay or arrest entry of judgment or imposition of sentence herein.

ROA.140. Given Moody's express waiver, *Burgett* is inapposite to his case, as it was in *Parke*. Moody suggests his pro se status prevented him from learning of *Burgett* until after his time for seeking habeas relief had run. ROA.107. Moody's misreading of *Burgett* aside, the district court correctly explained that ignorance of a case decided in 1967 was no excuse for avoiding AEDPA's time bar. ROA.107.

Any objection to the State's reliance on the 1998 Ellis County conviction would have been meritless, and counsel cannot be found ineffective for failing to make meritless objections. *See, e.g.*, *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) ("[C]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Because Moody's underlying IATC claim is meritless, Moody could not have been prejudiced by the absence of that claim in state habeas proceedings. And *Strickland* forbids Moody's speculation that a counseled, IATC version of his claim would have succeeded where his pro se state habeas claim failed. *See, e.g.*, *Adekeye v. Davis*, 938 F.3d 678, 684 (5th Cir. 2019) (establishing prejudice requires "specificity," not speculation); *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992) (*Strickland* prejudice may not rest on speculation).

### C. The Court may affirm on the alternative ground that Moody's IATC claim is meritless.

Alternatively, Moody's petition would fail even if it had been timely. AEDPA's statute of limitations does not constitute a jurisdictional bar to habeas review. *See Day v. McDonough*, 547 U.S. 198, 205-06 (2006). Accordingly, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See,*

*e.g.*, *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006); *Smith v. State of Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 429 & n.2 (6th Cir. 2006). Assuming arguendo that the current petition was timely, Moody's habeas application fails on the merits. *See Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005). This Court may affirm for any reason supported by the record. *Del Toro v. Quarterman*, 498 F.3d 486, 490 n.1 (5th Cir. 2007).

### 1.   AEDPA precludes relief.

Even if Moody's petition were timely, several provisions of AEDPA would preclude relief. Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)). Federal habeas courts must defer to the finding implicit in the CCA's rejection of Moody's pro se state habeas application (ROA.124)—that Moody validly waived counsel in 1998, *see, e.g.*, *Marshall v. Lonberger*, 459 U.S. 422, 431-32 (1983); *Ford v. Davis*, 910 F.3d 232, 234-35 (5th Cir. 2018) (section 2254(e)(1) applies to a state court's implicit findings); Brian R. Means, Federal Habeas Manual § 3:74 (Supp. May 2021) (federal courts owe deference to "basic, primary, and historical facts and the inferences that can properly be drawn regarding them"). This obstacle precludes Moody's current collateral attack on his 1998 Ellis County conviction. Moody does not contend that he can overcome such findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Nor could he. Separately, section 2254(e)(2) would bar Moody from developing evidence for the first time in federal court. Subject to conditions Mood cannot satisfy, section 2254(e)(2) provides that "[i]f the applicant has failed to develop the

factual basis of a claim in State court proceedings, the court shall not hold an eviden-tiary hearing on the claim." When triggered, section 2254(e)(2) precludes all evi-dence presented for the first time in federal court. *Holland v. Jackson*, 542 U.S. 649, 653 (2004) (per curiam).

Moody undisputedly failed to develop the factual predicate for his claims in state court. This lack of diligence in "investigat[ing] and pursu[ing] claims in state court" triggers section 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 435 (2000). Blaming lack of counsel is futile because AEDPA treats counsel and petitioner as one and the same. *See Holland*, 542 U.S. at 653. Section 2254(e)(2) applies when a failure to develop is "attributable to the prisoner *or the prisoner's counsel*." *Williams*, 529 U.S. at 432 (emphasis added). By tacitly acknowledging that he "would have had to satisfy" the pre-AEDPA cause standard to excuse "deficiency in the state-court record," Moody triggers being "controlled by § 2254(e)(2)." *Id.* at 434.

Moody fares no better under *Martinez*. By blaming lack of counsel, Moody implicitly admits his "failure to investigate" his claim "in anything but a cursory manner," which "triggers the opening clause of § 2254(e)(2)." *Williams*, 529 U.S. at 439-40. *Martinez* "protect[s] Texas habeas petitioners from completely forfeiting an IATC claim" but it does not "entitle[] petitioners to an evidentiary hearing in federal court in order to develop such a claim." *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016). Allowing "newly proffered evidence would effect a complete end run around the state court system and would violate AEDPA specifically." *Ibarra*, 738 F. App'x at 818-19 & n.4. And *Martinez*, which did not consider section 2254(e)(2), has no effect on that provision's meaning or application. *See, e.g.*,

*Segundo*, 831 F.3d at 350 (*Martinez* "merely allows federal merits-review of a claim that otherwise would have been procedurally defaulted" (cleaned up)); *Taylor v. Horn*, 504 F.3d 416, 437 n.17 (3d Cir. 2007) ("ineffectiveness of post-conviction counsel is not an exception to" section 2254(e)(2)).[5]

As the petitioner, Moody bears the burden of developing the record necessary to support habeas relief. *See United States v. Woods*, 870 F.2d. 285, 287-288 (5th Cir. 1989) (per curiam) (stating that a petitioner bears the burden "of demonstrating at least prima facie, those facts that establish a constitutional violation"); *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987) (holding that a habeas petitioner has the burden of proving facts in support of his claim, and unsupported conclusory allegations do not warrant habeas relief). As Moody's argument in district court indicates, Moody's IATC claim would depend on developing new evidence about the circumstances of his 1998 conviction. *See, e.g.*, ROA.87-89. Because Moody is precluded from now developing and presenting that evidence by section 2254(e)(2), AEDPA bars relief.

---

[5] The Supreme Court recently granted certiorari in two cases to consider whether "application of the equitable rule th[e Supreme] Court announced in *Martinez v. Ryan* render[s] 28 U.S.C. § 2254(e)(2) inapplicable to a federal court's merits review of a claim for habeas relief." Pet. i, *Shinn v. Ramirez*, No. 20-1009; *see Shinn v. Ramirez*, No. 20-1009, 2021 WL 1951793 (May 17, 2021) (granting certiorari). The grant of certiorari does not displace existing precedent, let alone require this Court to await Supreme Court resolution. *See, e.g.*, *Cantu v. Collins*, 967 F.2d 1006, 1012 n.10 (5th Cir. 1992) ("The [Supreme] Court's grant of certiorari in a capital case does not cause us to deviate from circuit law[.]").

### 2. Moody received constitutionally effective assistance of trial counsel in connection with his 2015 plea deal.

To prevail on his IATC claim under *Strickland*, Moody must prove two elements: that counsel's performance was deficient and that those deficiencies were prejudicial.[6] The same two-part *Strickland* standard applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong is satisfied by a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 57 (citing *Strickland*, 466 U.S. at 687-88). Counsel need only possess a reasonable understanding of the law in relation to the facts such that the defendant can enter a knowing and voluntary plea. *United States v. Cavitt*, 550 F.3d 430, 440-41 (5th Cir. 2008). To satisfy the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "[A] defendant must 'affirmatively prove' prejudice. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A petitioner must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citation omitted).

---

[6] Moody's pro se federal habeas petition initially presented his claim as one challenging the constructive denial of counsel under *Cronic*. ROA.14. In considering Moody's pro se COA application, the Court construed Moody's petition to include an IATC claim under *Strickland*. COA Op. 2. The Court granted a COA only on *Moody*'s "*Strickland* IATC claim" and denied a COA on Moody's *Cronic* claim. *Id.* at 2-3. Thus, no *Cronic* claim is before the Court.

Moody received effective assistance of counsel for his 2015 plea. The charged enhancements reflected Moody's prior DWI convictions. ROA.194. The trial court admonished Moody that he was charged with third-degree felony-enhanced DWI and, in exchange for pleading guilty, the State recommended twenty years' imprisonment and agreed to waive a deadly weapon finding and further enhancement based on Moody's 1999 DWI conviction. ROA.196. Moody, represented by counsel, made a judicial confession that "[a]ll enhancement and habitual allegations set forth in the indictment are true and correct, except those waived by the State." ROA.202; ROA.205. Moreover, the record accurately reflected that Moody waived counsel in 1998 when entering his guilty plea in Ellis County. ROA.140. Counsel was aware of this fact and that Moody would have had to disprove the validity of his waiver at trial. ROA.44. As counsel put it, pleading guilty in exchange for a twenty-year sentence provided "the best deal that was actually available" because it "sensibly avoided the risk of losing at trial and getting a sentence of 25 years or more." ROA.44.

Moody's reliance (ROA.49) on *Burgett* to avoid this result is misplaced for the reasons explained in Part II. Moreover, because the right to counsel for the predicate offense had been established when Moody pleaded guilty in 1998, it is presumed that Moody "validly waived his right to counsel." *United States v. Guerrero-Robledo*, 565 F.3d 940, 945 (5th Cir. 2009). Indeed, Moody's *express* waiver of counsel accompanies his 1998 guilty plea in the record. ROA.140. *Burgett* neither creates a "general presumption of invalidity" nor lightens the petitioner's "burden of proving that the convictions used by the State to enhance his sentence were uncounseled." *Mattheson v. Maggio*, 714 F.2d 362, 365 (5th Cir. 1983) (per curiam). Here, the record "does not

reveal a facially invalid prior conviction." *Sones v. Hargett*, 61 F.3d 410, 420 (5th Cir. 1995). And even if trial counsel was mistaken about any of these facts, any mistake was not objectively *unreasonable* given the state of the law surrounding *Burgett*. *See Richter*, 562 U.S. at 110-12.

Nor could Moody's 2015 trial counsel have avoided the "presumption of regularity" attached to his 1998 judgment of conviction. *Guerrero-Robledo*, 565 F.3d at 943-44. "[E]ven when the question is waiver of constitutional rights," Moody undoubtedly faced "the 'presumption of regularity' that attaches to final judgments." *Parke*, 506 U.S. at 29. As the petitioner, Moody "has the burden of proving that the convictions used by the State to enhance his sentence were uncounseled." *Mattheson*, 714 F.2d at 365.

Nothing indicates that, had Moody gone to trial in 2015, he could have overcome the presumption of regularity for the 1998 conviction. The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. Rather, federal law presumes that courts have zealously guarded a defendant's rights. *See Sones*, 61 F.3d at 420 (rejecting the argument that a court "must presume the invalidity of any prior conviction when the evidence supporting it is silent on the issue of representation"). Moody's own self-serving statements do not meet his burden to show otherwise. *See Rubio*, 629 F.3d at 494; *accord Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (per curiam). Moody lacks any clear and convincing evidence that would call into question the validity of his waiver of counsel, and he cannot fault his trial lawyer based on mere speculation otherwise. *Pinholster*, 563 U.S. at 189 (holding that

prejudice under *Strickland* requires a "'substantial,' not just 'conceivable,' likelihood of a different result") (quoting *Richter*, 562 U.S. at 112); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Moody's claim fares no better even if, hypothetically, trial counsel could have pursued some alternative plea arrangement. "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice." *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012). Prejudice requires a reasonable probability that a plea offer would have been presented to and accepted by the court and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Here, there is no indication that any better deal was possible for Moody. By all apparent accounts, Moody got the best deal that was "actually available." ROA.44. Even without Moody's 1998 DWI conviction, Moody still had at least three other DWI convictions. *See* ROA.194. Moody indisputably faced being prosecuted as a "habitual offender," which would have carried a sentence of twenty-five years to ninety-nine years or life. Tex. Penal Code § 12.42(d). Moody suggests no plausible way he could have bargained past a habitual-offender enhancement—let alone a deadly weapon finding, *see id.* § 12.35(c)(1), which would have jeopardized his opportunity for parole or other early release—but for the plea deal he accepted, *see* ROA.196.

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Judd E. Stone II
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Ari Cuenin
Ari Cuenin
Assistant Solicitor General
Ari.Cuenin@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Respondent-Appellee

## CERTIFICATE OF SERVICE

On November 15, 2021, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Ari Cuenin
ARI CUENIN

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,383 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Ari Cuenin
ARI CUENIN